**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVIE JAMES KIMMEL, | : | Civil No. 1:23-CV-00331 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TINA LITZ, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Pending before the court is an unopposed motion for summary judgment filed by the two remaining Defendants in this action, Carlos Falu ("Falu") and C.O. Nasr ("Nasr").  (Doc. 25.)  Because Defendants have presented evidence that the use of force that is in dispute in this case was not unreasonable and Plaintiff has not provided evidence to the contrary, the court will grant the motion and enter judgment in favor of Defendants.

**BACKGROUND AND PROCEDURAL HISTORY**

Davie James Kimmel ("Plaintiff"), an inmate currently housed at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed a complaint that raised claims of excessive force, assault by a correctional officer, extensive emotional abuse, extensive emotional stress, and a fear for his safety under the umbrella of 42 U.S.C. § 1983 against eight Defendants: (1) Tina Litz, ("Litz"), Warden; (2) Becky Davis ("Davis") Deputy Warden of Treatment; Carlos

Falu ("Falu"), Corrections Officer; (4) Nast ("Nasr")[1], Corrections Officer; (5)

Doughty, LPCI; (6) an illegible name of a Corrections Officer "Defendant Six"; (7)

Getch, Corporal; and (8) Farmer, Corrections Officer.  (Doc. 1.)  The complaint

alleges that on February 11, 2023 in the Lebanon County Prison gym, unidentified

corrections officers refused to get Plaintiff soap. (*Id*., p. 6.)[2] Defendants Falu and

Nasr then assaulted Plaintiff by slamming him against the gym window, punching

him in the head, slamming him onto the gym floor, pepper spraying him, rubbing

the pepper spray into his eyes, and slamming his face into the brick wall. (*Id*.)

Plaintiff also filed a motion to proceed *in forma pauperis*.  (Doc. 2.)

On April 3, 2023, the court granted the motion to proceed *in forma pauperis*,

screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismissed all

the claims except those raised against Defendants Falu and Nasr.  (Doc. 9.)  On

July 24, 2024, Defendants Falu and Nasr answered the complaint.  (Doc. 17.)

Following fact discovery, Defendants Falu and Nasr filed the motion for summary

judgment currently at issue.  (Doc. 25.)  Plaintiff failed to respond to the motion,

and the court granted Plaintiff additional time to respond.  (Doc. 30.)  Despite this

---

[1] While Plaintiff uses the name Nast in the complaint, Defendants identify him as Ahmed Nasr. (Doc. 26, p. 1.)  Therefore, the court will use the name Nasr.

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

additional time, Plaintiff failed has not responded to the motion.  Therefore, this motion for summary judgment is unopposed.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Huntingdon in Cumberland County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

### A. Summary of Undisputed Facts

Defendants Falu and Nasr provided a statement of undisputed material facts, affidavits, and surveillance footage.  (Docs. 26, 26-1, 26-2, 28.)  Plaintiff was incarcerated at the Lebanon County Correction Facility on February 11, 2023.  (Doc. 26, p. 1.)  Defendants Falu and Nasr were employed as Correctional Officers at Lebanon County Correctional Facility on that date.  (Doc. 26, p. 1–2; Doc. 26-1, p. 2; 26-2, p. 2.)  On the evening of February 11, 2023, Plaintiff was participating in recreation time on his own because he was housed in the Restricted Housing Unit ("RHU").  (Doc. 26, p. 2; Doc. 26-1, pp. 2–3.)  At 6:10 p.m., Plaintiff approached the gym door and began yelling and motioning for officers.  (Doc. 26,

p. 2; Doc. 26-1, p. 3.)  Defendant Falu and non-party Correctional Officer Tyler Peiffer approached the gymnasium door.  (Doc. 26, p. 2; Doc. 26-1, p. 3.)  When the two officers reached the door, Plaintiff began to yell that he had not been provided with soap that he allegedly requested from another officer.  (*Id*.)  Officer Peiffer told Plaintiff that he was unaware of any request for soap, that recreation time was over, and it was time for Plaintiff to return to his cell.  (*Id*.)  Officer Peiffer opened the gym door and both Officers Peiffer and Falu directed Plaintiff to raise his wrists so that restraints could be applied to Plaintiff to transport him back to his cell.  (Doc. 26, p. 2; Doc. 26-1, pp. 3–4; Doc. 26-2, p. 2.)  Defendant Nasr then went to the gym door after hearing Plaintiff yelling.  (Doc. 26, p. 3; Doc. 26-2, p. 2.)  Defendant Nasr directed Plaintiff to cuff up and comply with the directives of Officers Peiffer and Falu.  (Doc. 26, p. 3; Doc. 26-1, p. 4; Doc. 26-2, p. 2.)  Plaintiff refused to comply and remained verbally disrespectful.  (Doc. 26, p. 3; Doc. 26-1, p. 4; Doc. 26-2, p. 3.)  After disobeying multiple orders to be cuffed, Defendants Falu and Nasr and Officer Peiffer entered the gym to apply restraints on Plaintiff, at which point, Plaintiff retreated from the doorway, turned his back, and began walking into the gym to avoid being restrained.  (Doc. 26, p. 3; Doc. 26-1, p. 4; Doc. 26-2, p. 3.)

Defendants Falu and Nasr used "leading techniques" in an attempt to secure Plaintiff's compliance to apply wrist restraints.  (Doc. 26, p. 3; Doc. 26-1, p. 4;

Doc. 26-2, p. 3.)  Defendant Nasr states that he placed his hand on Plaintiff's right arm and "began to guide Plaintiff against the wall to secure his compliance." (Doc. 26-2, p. 3.)  Defendant Falu stated that he placed his hand on Plaintiff's left arm and began to guide Plaintiff towards the wall.  (Doc. 26-1, p. 5.)  Defendant Nasr states that after Plaintiff was placed against the wall, he continued to act in a physically and verbally defiant manner and attempted to pull away from "our grasp."  (Doc. 26-2, p. 3.)  Defendant Falu also states that Plaintiff attempted to pull away while against the wall.  (Doc. 26-1, p. 5.)  Both Defendants states that they used "leading techniques" to lower Plaintiff to the ground in an attempt to apply wrist restraints.  (Doc. 26-1, p. 5; Doc. 26-2, p. 3.)  After being lowered to the ground, Plaintiff continued to resist by kicking and placing his arms under his body to avoid being restrained.  (*Id.*)  Defendant Nasr states that in light of the continued resistance, he deployed a single, one-second burst of Oleoresin Capsicum ("OC") spray.  (Doc. 26-2, p. 3.)  Following the use of OC spray, the Defendants were able to place the wrist restraints on Plaintiff.  (Doc. 26-1, p. 5; Doc. 26-2, p. 3.)  Following restraint, Plaintiff ceased his defiant behavior, was escorted to the decontamination closet, and was advised of the facility's OC warnings.  (Doc. 26-1, p. 6; Doc. 26-2, pp. 3–4.)  Plaintiff was evaluated by the medical department.  (Doc. 26-2, p. 4.)

The court has also viewed the surveillance video of the incident supplied by Defendants.  (Doc. 28.)

## B. Defendants' Motion Will Be Granted and Judgment Will Be Entered in Defendants' Favor.

Plaintiff brings an Eighth Amendment use of excessive force claim and state law claims of assault and intentional infliction of emotional distress.  (Doc. 1.) The court will grant judgment in favor of Defendants on all three claims.

### 1. Use of Excessive Force

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases . . . where the deliberate use of force is challenged as excessive and unjustified."  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6–7, (1992) (citing *Whitley*, 475 U.S. 312).  In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

8

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

Defendants have presented evidence in the forms of affidavit and surveillance video demonstrating that Plaintiff was resisting restraint when requested by staff to comply with being restrained, that force was required to restrain Plaintiff, that the restraint was minimal, and there was no resulting injury. This meets the burden placed on the moving party by *Celotex Corp.* Despite ample time to respond, Plaintiff has failed oppose the motion. Therefore, the court will grant Defendants' motion and enter judgment in favor of Defendants on the Eighth Amendment claims.

### 2. Assault

Plaintiff brings a state assault claim against Defendants. (Doc. 1.) In Pennsylvania, "an assault occurs when one acts with the intent to place another in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause such apprehension." *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 255 (M.D. Pa. 2009). Additionally, the actor must be in a position to inflict this contact and take some affirmative action to do so. *Picariello v. Fenton*, 491 F. Supp. 1026, 1037 (M.D. Pa. 1980). "While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct

is considered an assault and battery." *Tejada v. Dale*, No. 14-CV-5604, 2015 WL 5729273, at \*6 (E.D. Pa. 2015) (citing *Picariello*, 491 F. Supp. at 1038 (determining that "necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but privileged contacts.")).

Defendants have submitted evidence in the form of affidavits and surveillance video demonstrating that the use of force was reasonable to restrain Plaintiff. Plaintiff has failed to oppose the motion. Therefore, the court will grant Defendants' motion and enter judgment in their favor on the assault claim.

### 3. Intentional Infliction of Emotional Distress

Plaintiff also brings claims of intentional infliction of emotional distress against Defendants. (Doc. 1.)

A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Bruffett v. Warner Commc'ns, Inc.,* 692 F.2d 910, 914 (3d Cir. 1982).

Here, Defendants have presented evidence that they responded to Plaintiff's resistance with reasonable use of force. *See supra*. Therefore, Defendants have presented evidence that their conduct was not extreme or outrageous. Plaintiff has failed to oppose the motion. The court will grant the motion for summary

judgment and enter judgment in Defendants' favor on the intentional infliction of emotions distress claim.

CONCLUSION

For the above-stated reasons, the court will grant Defendants' unopposed motion for summary judgment, grant judgment in favor of Defendants on all claims, and close the case.

An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: September 26, 2024